Ruby Sears TIGRETT, Appellant,

v.

HERITAGE BUILDING COMPANY, Appellee.

No. 8314.

Court of Civil Appeals of Texas, Texarkana.

Jan. 6, 1976.

Rehearing Denied Feb. 17, 1976.

Alfred W. Ellis, Woodruff & Smith, Dallas, for appellant.

Gerald Coplin, Passman, Jones, Andrews, Coplin, Holley & Co., Dallas, for appellee.

CHADICK, Chief Justice.

Appellant, Ruby Sears Tigrett, moved for judgment upon the verdict a jury returned to special issues in a breach of contract action.[1] The Motion was overruled and a motion for judgment notwithstanding the verdict, urged by appellee Heritage Building Company, was granted. Judgment was entered in the trial court that Mrs. Tigrett take nothing.

## I.

Stated in broad terms the issue in this appeal is whether the parties, Mrs. Tigrett and Heritage Building Company, entered into an enforceable contract. To simplify discussion, the question is divided into two parts and a negative answer to either requires an affirmance of the judgment below.

## II.

■ Heritage Building Company, Mrs. Tigrett's employer at times pertinent to this case, is a non-subscriber as classified by the Texas Workmen's Compensation Act. Heritage's position in this appeal is that Vernon's Ann.Civ.St. art. 8306, Secs. 1 and 4[2]

---

1. Both an action for negligent tort and for breach of contract were originally plead by Mrs. Tigrett. Prosecution of the tort action was abandoned at the beginning of the trial.

2. "Section 1. In an action to recover damages for personal injuries sustained by an employe in the course of his employment, or for death resulting from personal injury so sustained, it shall not be a defense:
   1. That the employe was guilty of contributory negligence.
   2. That the injury was caused by the negligence of a fellow employe.
   3. That the employe had assumed the risk of the injury incident to his employment; but such employer may defend in such action on the ground that the injury was caused by the willful intention of the employe to bring about the injury, or was so caused while the employe was in a state of intoxication."

   \* \* \* \* \* \*

   "Sec. 4. Employes whose employers are not at the time of the injury subscribers to said association, and the representatives and beneficiaries of deceased employes who at the time of the injury were working for nonsubscribing employers can not participate in the benefits of said insurance association, but they shall be entitled to bring suit and may recover judgment against such employers, or any of them, for all damages, sustained by reason of any personal injury received in the course of employment or by

governed Mrs. Tigrett's suit and that such statute excludes a breach of contract action and confined Mrs. Tigrett to a negligent tort action for recovery of damages she claimed for personal injuries received in the course of her employment. Heritage insists the term *shall* in Article 8306, Sec. 4 is utilized in the mandatory sense, when consideration is given to the intent of the act and its purposes and restrictions. In this connection it is postulated that the intent of Sec. 4 is to provide an exclusive remedy; and that the only remedy allowed is a suit by an injured employee against a non-subscribing employer for damages resulting from the employer's negligence proximately causing the employee's injury. Article 8306, Sec. 1 is interpreted as impliedly supporting the exclusive remedy construction by singling out and denying to the non-subscriber employer only tort action defenses of contributory negligence, negligence of a fellow employee, and assumed risk of injury incident to employment.

Heritage cites *State Board of Insurance v. Betts,* 158 Tex. 612, 315 S.W.2d 279 (1958); *Crickmer v. King,* 507 S.W.2d 314 (Tex.Civ.App. Texarkana 1974, no writ); *Few v. The Charter Oak Fire Insurance Company,* 463 S.W.2d 424 (Tex.1971) and *Employers' Liability Assur. Corporation, Limited v. Young County Lumber Co.,* 122 Tex. 647, 64 S.W.2d 339 (1933, opinion adopted) in support of its argument that use of the word *shall* in Sec. 4 indicates a legislative intent that a negligence suit is mandatory and exclusive. Unquestionably the auxiliary verb *shall* has a mandatory connotation. However, not one word but the act as a whole must be consulted in determining the legislative intent. 53 Tex. Jur.2d, Statutes, Sec. 163. *Gayle v. Alexander,* 75 S.W.2d 706 (Tex.Civ.App. Waco 1934, no writ)[3] provides useful directions for

ascertaining legislative intent, there it is said,

"A mandatory provision in a statute is one, the omission to follow which renders the proceeding to which it relates illegal and void, while a directory provision is one, the observance of which is not necessary to the validity of the proceeding. A statute may be mandatory in some respects and directory in others. (Citations omitted) There is no universal rule or absolute test by which directory provisions in a statute may in all circumstances be distinguished from those which are mandatory, but in the determination of this question, as every other question of statutory construction, the prime object is to ascertain the legislative intent from a consideration of the entire statute, its nature, its object, and the consequences that would result from construing it one way or the other. Words of permissive character may be given a mandatory significance to effect the legislative intent. On the other hand, the language of a statute, however mandatory in form, may be deemed directory whenever the legislative purpose can best be carried out by such construction."

The same exclusive remedy contention made in the present appeal was urged[4] in *Anderson-Berney Realty Co. v. Soria,* 123 Tex. 100, 67 S.W.2d 222 (1933). The contention was rejected. The employer in the *Soria* case was a subscriber when the employment contract with Soria was made. The employers' Workmen's Compensation insurance policy was permitted to lapse but neither statutory nor other notice that the employer had ceased to be a subscriber was given. Soria, a watchman, was murdered in the course and scope of his employment. Soria's wife, as beneficiary, brought an ex contractu action for damages grounded

---

reason of death resulting from such injury, and the provisions of section 1 of this law shall be applied in all such actions."

**3.** A Per Curiam Opinion. Judge James P. Alexander, later Chief Justice, Supreme Court of Texas, was a member of the court.

**4.** The briefs on file in the Supreme Court were examined, as well as the court's opinion, to confirm this fact.

upon a breach of the employment contract, which when made, provided for Texas Workmen's Compensation Act coverage. The ex contractu action was sustained. The *Soria* case does not decide the precise question presented in this appeal and no case in point, from this or any other jurisdiction, has come to the attention of this court. But the *Soria* case clearly holds that an employee injured in the course and scope of his employment may prosecute a breach of contract action against his non-subscribing employer and such employee or his beneficiary is not confined by Secs. 1 and 4 to a negligence action.

The primary purpose of the Texas Workmen's Compensation Act is to benefit and protect employees. 62 Tex.Jur.2d, Workmen's Compensation, Sec. 2. The act is generally held to be remedial and its uncertain provisions are liberally construed to accomplish the act's purpose and promote justice. 62 Tex.Jur.2d, Workmen's Compensation, Sec. 8. The act regulates in detail the relationship of subscribing employers and their employees or successor beneficiaries. However, regulation of non-subscribers and their employees is less extensive and the act does not expressly change their relationship except to restrict the non-subscribers' defenses to an employee's negligence action. Deprivation of the valuable right to contract for his own benefit and protection with a non-subscriber is not beneficial to an employee and intent to declare or imply that it is beneficial is not discernable in the terms or objective of the act. No declared or implied purpose of the act that would be furthered by a restriction on the right of non-subscribers and their employees to validly contract is suggested by Heritage or known to this court.

To sum up, consideration of the law settled by *Anderson-Berney Realty Co. v. Soria,* supra, together with the general purpose of the Texas Workmen's Compensation Act, and application of the rule of *Gayle v. Alexander,* supra, leads to the conclusion that Article 8306, Secs. 1 and 4 does not provide an exclusive remedy, and that an employee of a non-subscriber may maintain an action for a breach of a valid contract governing employment. Whether Mrs. Tigrett and Heritage entered into a valid contract governing compensation for her injuries must next be considered.

### III.

Mrs. Tigrett's pleadings stated the existence of a contract and its breach and relied upon the rule of law that a contract implied in fact arises when the acts of the parties are such as to indicate a mutual intent to contract. See *Marr-Piper Co. v. Bullis,* 1 S.W.2d 572 (Tex.Comm'n App.1928, jdgmt. adopted); *Terry County Airport Board v. Clark d/b/a Clark Aerial Service,* 378 S.W.2d 932 (Tex.Civ.App. Amarillo 1964, no writ); *Turners, Inc. v. Klaus,* 341 S.W.2d 182 (Tex.Civ.App. San Antonio 1960, writ ref'd n. r. e.); *Kuhlmann's Estate v. Poss,* 220 S.W. 564 (Tex.Civ.App. San Antonio 1920, no writ).

A few months before injury, Mrs. Tigrett, in a casual conversation with a work supervisor concerning delivery of a check to a fellow employee who had undergone surgery, was told ". . . this is such a good company that they pay workmen's compensation to a man when he didn't get hurt on the job." About ten days after Mrs. Tigrett was injured she asked the shop manager about compensation and was told she, as a piece-work or contract worker, was not entitled to workmen's compensation. She protested that she was an hourly employee at the time of injury and was advised to take the claim for compensation to Mr. G. M. Pointer, described in the record as the owner of the company. She telephoned Mr. Pointer and he agreed to get "the workmen's compensation checks started." She thereafter received nine weekly checks for forty-nine dollars ($49.00) each, drawn on the company's compensation account, and several distinctly marked as payment of workmen's compensation. The amount of the each weekly check was equal to the Texas Workmen's Compensation Act rate

for weekly total disability under the law in effect when Mrs. Tigrett was injured.

Mr. Pointer's testimony, fairly summarized, was that it was the policy of the company to provide its employees the same benefits that would have been available to them under the Texas Workmen's Compensation Act, insisting that each injured employee was considered on an individual basis, and that valued employees might be compensated on a different basis, but even new employees and laborers were compensated at "at least as much as they would have gotten had there been workmen's compensation in effect" adding that "if a man got hurt on the job and it was our fault, we paid his bills." For impeachment purposes this extract from a letter written by Mr. Pointer in response to a claim, approximately three years before Mrs. Tigrett's injury, was admitted in evidence, viz.:

"This company provides the same benefits that would be available to the employee under the Compensation Act; therefore, if you will have Mr. Gardner contact us we will attempt to find a doctor in Terrell that can give him the needed medical treatment. This company will pay these bills. Also if you will so advise us we will calculate compensation which he is due and forward it to you."

The shop manager was asked if the company "had an implied agreement with its employees to provide them with the same benefits to which they might have been entitled had there been workmen's compensation coverage." He replied that most employees did not ask but any that did were told ". . . we would provide for them as was the case, you know, and if they needed anything, why, we would do it." When asked to clarify his statement he said: "Well, of course, I being an employee there was also concern about if I happened to get hurt on the job or anything and as me personally asking about me personally, I had been assured, you know, that each case was taken up on its individual merits. I mean if a man breaks his leg, he suffers no loss of income. He doesn't suffer any hard-

ships at all. This is what I was given to believe when I went to work here."

After injury Mrs. Tigrett underwent treatment by a physician of her own choice. When she made a claim she was directed by Heritage supervisory personnel to consult certain other physicians, chosen by Heritage, and did so. She underwent examination, hospitalization, and treatment prescribed by the company's chosen medical practitioners over a period of several months and was still requesting medical service when she was advised that Heritage would no longer assist her.

The jury found as a fact that Heritage offered to provide its employees with the same benefits that they would have received had it provided insurance coverage under the Texas Workmen's Compensation Act and that Mrs. Tigrett accepted the offer thereby consummating a contract. The jury apparently disbelieved the exculpatory evidence offered by Heritage, as it was authorized to do, that is, ". . . if . . . it was our fault, we paid . .".

■ The previously recited facts clearly evidence such essentials of a contract as competent parties, contractual subject matter, and mutuality of agreement. These elements need no further notice but mutuality of obligation and contractual consideration is less clear. There is evidence of partial performance by both Mrs. Tigrett and Heritage. Heritage paid and Mrs. Tigrett accepted weekly benefits; medical treatment was furnished and accepted. It is a settled rule that consideration may be either a benefit to the promisor or detriment to the promisee. 17 Am.Jur.2d, Contracts, Sec. 96. By agreeing to accept benefits measured by the provisions of the workmen's compensation law Mrs. Tigrett gave up her acknowledged right to sue in tort for her full damage. And, on the other hand, in consideration of limiting its liability to the equivalent of benefits that might accrue under the Texas Workmen's Compen-

sation Act, Heritage escaped liability in tort for Mrs. Tigrett's full disability. The agreement and conduct of the parties is such that promissory estoppel might be invoked by either as a substitute for consideration; though decision here does not necessarily rest upon that doctrine. See 17 Am. Jur.2d, Contracts, Sec. 89. In the partial performance of the contract Mrs. Tigrett gave up the ministrations of her chosen physician and changed her position by accepting treatment tendered by Heritage as well as otherwise conforming to the contract found by the jury.

■ Contention that the contract is void because it purports to limit Heritage's liability for the consequences of its own negligence ignores the posture of the case. The contract was made after Mrs. Tigrett's injury, not before, and it dealt with existing conditions, not future negligence or speculative facts. Prospective operation of the agreement was severable from the claim pending at the time the agreement was made. A valid subject of the agreement was the method by which the amount of any damages then claimed by Mrs. Tigrett would be calculated. The parties agreed that Mrs. Tigrett's existing, unliquidated claim for damage would be measured by the terms of the Texas Workmen's Compensation Act. Agreements of this nature have been upheld in other jurisdictions. See *Adler v. Hohn,* 129 Ohio 303, 195 N.E. 481 (1935); 15 Am.Jur.2d, Compromise and Settlement, Sec. 18. The contract was not contrary to public policy.

### IV.

As indicated, the conclusion is reached that the trial court should have entered judgment in response to the stipulations of the parties and the jury's verdict. The judgment of the trial court is reversed. In compliance with Tex.R.Civ.P. 434, judgment is rendered that Mrs. Tigrett recover compensation in a lump sum at the rate of $49.00 per week for 401 weeks, together with interest from the date of the trial court judgment, and costs.