**Ramona MARTINEZ, Appellant,**

v.

**IBP, INC., d/b/a IBP, Inc. of Nebraska, Appellee.**

**No. 07–97–0110–CV.**

Court of Appeals of Texas, Amarillo.

Jan. 22, 1998.

Rehearing Overruled March 26, 1998.

Law Offices of Len Olson, Len Olson, Law Offices of Steven L. McBride, Steven L. McBride, Amarillo, for appellant.

Underwood, Wilson, Berry, Stein & Johnson, P.C., Kelly Utsinger, Chad Pierce, Amarillo, for appellee.

Before BOYD, C.J., and DODSON and QUINN, JJ.

QUINN, Justice.

Ramona Martinez (Martinez) sued IBP, Inc., d/b/a IBP, Inc. of Nebraska (IBP), her ex-employer, for negligence, gross negligence, and retaliatory discharge. IBP joined issue and moved for summary judgment. The trial court granted IBP's motion, rendered a final summary judgment, and decreed that Martinez take nothing. Martinez

appealed, asserting eight points of error. Purportedly, the trial court erred in granting judgment because 1) IBP cited grounds for summary judgment in documents other than its motion, 2) the waiver she executed which relinquished her right to sue IBP was void as a matter of law, 3) IBP did not move for summary judgment on the issue of gross negligence, 4) evidence created a material issue of fact concerning whether the waiver was executed under duress, 5) the doctrine of election of remedies was inapplicable, 6) ratification was either inapplicable or unproven, 7) evidence created a material question of fact regarding her discharge in retaliation "for filing a claim for benefits under [IBP's] Workplace Injury Settlement Program," and 8) the doctrine of estoppel was inapplicable. We affirm.

### Background

Martinez began working for IBP on October 31, 1994. Within a week, she suffered an injury on the job. Apparently, a 30 to 40 pound parcel of meat fell on her. IBP was immediately notified of the incident. Though the company was not a subscriber to a statutory workers' compensation plan, it nevertheless had its own plan for remediating job related injuries. The plan was called "Workplace Injury Settlement Program" (WIS Program). Additionally, in exchange for receiving benefits thereunder, the employee had to sign a document effectively relinquishing his or her right to sue the company at common law. Martinez was informed of this condition during her initial orientation and prior to her injury. Moreover, once she had notified IBP of the accident, the employer tendered to her an "Acceptance and Waiver" form. Executed by her on November 10, 1994, the form read:

> I have been injured at work and want to apply for payments offered by IBP to me under its Workplace Injury Settlement Program. To qualify, I understand I must accept the rules of the Program. I have been given a copy of the Program summary. I accept the Program.
>
> I understand I am giving up the right to sue the Company and perhaps others because of my injury. I understand that the

Company would not be able to use certain common law defenses against me, but that the Company would never pay anything until a court decided that the Company caused my injury since the Company does not provide benefits under the Texas Workers' Compensation laws. I am giving up any rights I or any family member have [sic] to sue either the Company or anyone for whom the Company is responsible in exchange for being able to participate in the Program.

Once the form was signed, Martinez received medical attention from two physicians at IBP's expense. The expenses paid by the company totaled $2,531.61. According to the company, she also received an offer of light duty work, which was allegedly rejected.

By the end of January 1995, Martinez had retained legal counsel and sued IBP for damages. The damages were founded upon claims of negligence and gross negligence. Eventually, she amended her petition to aver a claim of retaliatory discharge. The latter occurred when IBP allegedly fired her on March 2, 1995, after she had "notified her supervisor, sought medical attention, and later, in good faith, requested that I.B.P. put in a claim pursuant to the Texas Workers' Compensation Act." The termination occurred, according to Martinez, because she "had pursued a valid workers' compensation claim."

Of course, IBP denied Martinez's allegations. So too did it posit that she was not terminated on March 2 but placed on leave of absence. Her discharge did not allegedly happen until March 2, 1996, after she failed to bid on a job pursuant to the terms of a general collective bargaining agreement. Under the agreement, an employee could not be on leave of absence for more than a year without bidding for a job. Finally, exceeding that period ended in termination, asserted IBP.

### Point One

In her first point, Martinez opined that the trial court erred in granting summary judgment because the "grounds cited by IBP in its Reply [to her response to the motion for summary judgment] and Brief ... could not, as a matter of law, support its summary

judgment." We disagree and overrule the point.

### 1. Applicable Law

It is true that the motion for summary judgment must itself state the specific grounds on which judgment is sought. TEX.R. CIV. P. 166a(c). What this means is that a court may not grant judgment for reasons unmentioned in the motion. *Sysco Food Serv., Inc. v. Trapnell,* 890 S.W.2d 796, 805 (Tex.1994). Thus, reasons proffered in a document other than the motion itself may not provide basis for judgment. *McConnell v. Southside Independent Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993); *but see Howell v. Murray Mort. Co.,* 890 S.W.2d 78, 85 (Tex. App.—Amarillo 1994, writ denied) (stating that the court may consider grounds mentioned in a brief which is incorporated by reference into the motion).

Yet, before we can hold that the trial court violated the foregoing restriction, the appellant must show that the ground relied upon by the trial court was not mentioned in the motion. For instance, assume that a movant sought summary judgment on the basis of A, B, and C and that A and B were mentioned in the motion but C was alluded to only in a separate brief. And, further assume that in granting the motion, the trial court did not disclose the ground upon which it relied. In that situation, the court could have conceivably relied upon ground C. Yet, it could have also found grounds A and/or B dispositive. For this reason, logic would require the party complaining of the judgment to negate the applicability of A and B before it could be said that C somehow influenced the outcome. Until this is done, we can hardly say that C tainted the decision. Finally, this is no different than the burden already imposed upon a non-movant on appeal. It is correctly his obligation to show why none of the grounds upon which the trial court could have acted are legitimate when several grounds are alleged but none are mentioned by the court as controlling. *See Miller v. Galveston/Houston Diocese,* 911 S.W.2d 897, 899 (Tex.App.—Amarillo 1995, no writ) (holding this to be the appropriate standard of review when the court's order is silent about the ground on which it relied).

### 2. Application of Law

At bar, IBP sought judgment upon the grounds of waiver, estoppel, release, ratification, election of remedies, the absence of causation, and the existence of a legitimate reason for termination. Furthermore, each was expressly mentioned in its motion for summary judgment. Whether the court acted upon these or others which may have been stated elsewhere is unknown for the judgment was general in nature.[1] Additionally, Martinez does not attempt to prove that the court found some unmentioned ground dispositive. Rather, she simply argues that because the court said it considered IBP's motion, Martinez's response thereto, IBP's reply to that response, the summary judgment proof, objections to summary judgment proof, and argument of counsel, "the trial court improperly considered such [unmentioned] grounds [which] ... hopelessly tainted" the proceedings. Under these circumstances, we are unable to say that the directives in Rule 166a(c), *Sysco,* or *McConnell* were violated. Nor can we say that the trial court acted upon a ground asserted somewhere other than IBP's motion for summary judgment.

### Points Two and Four

In her second point, Martinez contends that the trial court erred in granting summary judgment upon the claim of negligence because the waiver she signed was void as a matter of law. So too was it subject to avoidance because she supposedly signed it while under duress, as she explains in point four. We overrule both points.

As illustrated under point one, IBP says that it was entitled to summary judgment because Martinez had contractually relinquished her right to sue under the common law. Furthermore, the summary judgment grounds encapsulating that argument included waiver, release, election of remedies, ratification, and estoppel. Since the court granted summary judgment it undoubtedly relied

---

1. What those other grounds may have been Mar-    tinez does not say.

upon one or more of those defenses. But, because the particular defense or defenses utilized by the court went unmentioned, Martinez now must rebut each one. *Miller v. Galveston/Houston Diocese*, 911 S.W.2d at 899. And, her attempt to do so below was twofold, as it is here. First, she suggests that none of the defenses were applicable because their foundation, the Acceptance and Waiver form, violated public policy and, therefore, was void. Then she posits that if not void as against public policy, it was nevertheless avoidable since she signed it under duress. We now address each contention.

### 1. Void Contract

Martinez argues that public policy bars a non-subscribing employer from limiting its liability for injuries suffered by its employee. That this is so is allegedly illustrated by § 406.035 of the Texas Labor Code and the cases of *Hazelwood v. Mandrell Indus. Co., Ltd.*, 596 S.W.2d 204 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.); *Texas Health Enterpr., Inc. v. Kirkgard*, 882 S.W.2d 630 (Tex.App.—Beaumont 1994, writ denied); and *Broom v. Brookshire Bros., Inc.*, 923 S.W.2d 57 (Tex.App.—Tyler 1995, writ denied). We disagree.

■ Through section 406.035 of the Labor Code, the legislature declared that "[e]xcept as provided by this subtitle, ... agreement[s] by an employee to waive the employee's right to compensation [are] void." In so declaring, we conclude that the legislature intended that the employee contemplated by section 406.035 was one who worked for a subscribing employer. And, we garner this intent not only from the structure of the workers' compensation act itself but also case law. For instance, the term "compensation" alluded to is defined as "payment of a benefit." TEX. LAB.CODE ANN. § 401.011(11) (Vernon 1996). In turn, "benefit" is defined as a "medical benefit, an income benefit, a death benefit, or a burial benefit based on *a compensable injury*." *Id.* at § 401.011(5) (emphasis added). In turn, a "compensable injury" is one "that arises out of and in the course and scope of employment for which

compensation is *payable under this subtitle.*" *Id.* at § 401.011(10) (emphasis added). Upon reading these various definitions together, only one reasonable conclusion can be reached and that is that the term "compensation" in section 406.035 relates to the benefits payable under subtitle A of the Workers' Compensation Act. Next, these particular benefits are payable only to employees of a subscribing employer. Employees of a non-subscribing employer are relegated to seeking redress through sources other than the Act. *See Travelers Ins. Co. v. Brown*, 396 S.W.2d 425, 426 (Tex.Civ.App.—Texarkana 1965), *affirmed*, 402 S.W.2d 500 (Tex.1966) (noting that those working for a non-subscribing employer may sue under the common law); *Britt v. Suckle*, 453 F.Supp. 987, 993 (E.D.Tex.1978) (noting that non-subscribing employers may be sued for negligence while those working for subscribing employers are restricted to recovering under the Act).

■ So, to interpret section 406.035 as Martinez argues would be to read it as prohibiting employees of non-subscribing employers from waiving benefits which they have no right to receive in the first place. Since that construction is unreasonable, we cannot adopt it. *Brammer v. Martinaire, Inc.*, 838 S.W.2d 844, 847 (Tex.App.—Amarillo 1992, no writ) (stating that a statute must be interpreted to achieve a reasonable result). And, that is why we conclude that section 406.035 pertains to only employees of a subscribing employer.

As to *Hazelwood, Kirkgard,* and *Broom*, none espouse a blanket prohibition against agreements like that executed here. For instance, in *Broom*, the issue was one of wrongful termination. Employee Broom had sued her non-subscribing employer because it allegedly fired her for refusing to release it from liability. The sole issue on appeal was whether that allegation stated a claim within the ambit of section 451.001 of the Labor Code and whether Broom secured a jury finding on her section 451.001 claim.[2] The

---

2. Section 451.001 of the Texas Labor Code prohibits a person from discriminating against employees who filed a workers' compensation claim

in good faith, hired a lawyer to represent the employee in a claim, instituted a proceeding under subtitle A of the Workers' Compensation Act,

appellate court was not asked to decide whether those working for a non-subscribing employer may waive their rights to common law redress. Nor did the court purport to answer that question even though it mentioned section 406.035 in its opinion.

As for *Hazelwood*, the case also involved a non-subscribing employer. Apparently, the latter had executed an employment agreement with its employee which provided coverage for work related injuries. Furthermore, the dispute presented to the court involved whether that agreement was void since it purported to reserve to the employer its common law defenses. In response, the court held the agreement void *but not because an employee was somehow prohibited from waiving his right to sue his employer.* Instead, because the employer tried to reserve a right which the workers' compensation laws expressly denied it (that right being the ability to assert affirmative defenses), the agreement was unenforceable. *Hazelwood v. Mandrell Indus. Co., Inc.*, 596 S.W.2d at 206. Most interestingly, in reaching this determination the *Hazelwood* panel expressly acknowledged that voluntary employment contracts of nonsubscribing companies which recompense injured employees have been held valid. *Id.* at 205. Given the latter acknowledgment and the specific basis upon which the court acted, it can hardly be said that *Hazelwood* stands for the general proposition that employees of non-subscribing employers cannot release their common law claims. Finally, because IBP did not purport to reinvest itself with any common law defenses via the WIS Program or the Acceptance and Waiver, *Hazelwood* is of no import here.

As for *Kirkgard*, the court did state that "[a]n employment agreement limiting a non-subscribing employer's liability for job-related injuries is void as against public policy." *Texas Health Enterpr., Inc. v. Kirkgard*, 882 S.W.2d at 634. But, to read this as encompassing every possible agreement would be to read it too broadly, for several reasons. First, neither of the two cases cited as support, *Hazelwood v. Mandrell Indus. Co., Inc.* nor *Barnhart v. Kansas City, M. & O. Ry. Co. of Texas*, 107 Tex. 638, 184 S.W. 176 (1916), do so. As shown above, the former only holds void those non-subscriber contracts under which liability is limited *and* affirmative defenses are retained. And, the latter merely holds that an employer cannot delegate to its employee the non-delegable duty to provide one with a safe place to work. *Barnhart v. Kansas City, M. & O. Ry. Co. of Texas*, 184 S.W. at 179; *see Rodriquez v. Estes*, 635 S.W.2d 918, 919 (Tex.App.—Amarillo 1982, no writ) (stating that an employer has a non-delegable duty to provide employees a safe workplace). Whether a post-injury agreement could be struck between an employer and employee whereby the former agrees to recompense an employee's injuries in exchange for the employee waiving common law claims was not addressed in *Barnhart*.

Second, if *Kirkgard* were as all-encompassing as it appears, its practical effect would be unreasonable. Simply put, one would be precluded from ever settling a dispute through means short of adjudication by a court of competent jurisdiction. This is so because any settlement short of utter capitulation by the non-subscribing employer could be seen as limiting that employer's liability and, therefore void. Consequently, employers would be placed in the position of having to litigate every claim to final judgment before its liability could be liquidated. In turn, employees could conceivably be placed in the posture of having no choice but to wait until a favorable judgment is won before obtaining medical care or other redress from the employer. The result would be nothing short of increased delay and litigiousness and the utter vitiation of the principle that voluntary settlements are favored under the law. *Gillman v. Gillman*, 313 S.W.2d 931, 941 (Tex. Civ.App.—Amarillo 1958, writ ref'd n.r.e.); *Jasso v. Planet Insurance Co.*, 735 S.W.2d 273, 275 (Tex.App.—Dallas 1987, writ ref'd n.r.e.); *see also Memorial Medical Center v.*

or testified or will testify in any such proceeding. Furthermore, authority has held that provision to include discriminatory acts undertaken by non-subscribing employers. *Hodge v. BSB Inv., Inc.*,

783 S.W.2d 310, 313 (Tex.App.—Dallas 1990, writ denied) (applying the pre-code article 8307c, section 1, to non-subscribers).

*Keszler,* 943 S.W.2d 433, 435 (Tex.1997) (reiterating the court's reluctance to approve of a rule that prevents the settlement of claims). We do not think that the *Kirkgard* court intended such an outcome.

For the foregoing reasons, we read *Kirkgard* as being limited to its facts and not to a situation wherein an agreement limiting liability is struck after the claim has arisen. In doing so we strike a balance between whatever desire that court sought to further and the indisputable policy favoring the voluntary settlement of claims and disputes.[3] Moreover, such an interpretation of *Kirkgard* would bring it in line with other authority. For instance, in *Tigrett v. Heritage Bldg. Co.,* 533 S.W.2d 65 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.), the court refused to void an agreement between a non-subscribing employer and injured employee under which the latter received particular benefits in exchange for relinquishing her right to sue in tort. *Id.* at 70. It did so because the contract dealt with an existing claim and the "valid subject" of calculating, or liquidating, the amount of that claim. *Id.* This was no less the reasoning of the Supreme Court in the recent case of *Memorial Medical Center v. Keszler.* There, a party asserted that damages arising from gross negligence could not be released. But, the court disagreed. Instead, it declared that such agreements can be executed once the claim has arisen. *Memorial Medical Center v. Keszler,* 943 S.W.2d at 435. It could find "no logic in prohibiting people from settling *existing* claims." *Id.* (emphasis added). Nor can we.

■ Here, the agreement struck by Martinez and IBP falls within the zone approved in both *Tigrett* and *Keszler.* Having been executed after the injury occurred, it dealt with existing conditions and claims. So too did it serve the valid purpose of liquidating her claim. That she also released IBP from the threat of a law suit in tort in exchange for immediately receiving benefits did not render the accord objectionable or unenforceable. Therefore, it was not void as contrary to public policy, and the trial court was free to rely upon it to hold that Martinez waived and/or released her claims or otherwise elected her remedies.

## 2. *Duress*

■ Martinez next argues that the waiver was subject to avoidance since she executed it under duress. We again disagree. Among other things, duress requires proof of a threat to do something which the threatening party has no right to do. *Herndon v. First Nat'l Bank of Tulia,* 802 S.W.2d 396, 399–400 (Tex.App.—Amarillo 1991, writ denied). Martinez nowhere discusses this element in her appellate brief. Nor did she address it in her response to the summary judgment. Instead, she merely argues 1) that she was in pain and lacked the financial ability to obtain her own medical attention and 2) that IBP stated that it "**would not pay** for anything unless the waiver were signed or a court found the defendant liable." (Emphasis in original).

■ Yet, we know of no law, and Martinez cites us to none, which requires an employer to immediately capitulate to the unadjudicated demands and claims of an injured employee. Indeed, an employer, like anyone else, is entitled to have a court adjudicate its liability before recompensing some purported wrong. So, the proposition that IBP would not pay until a court found it liable cannot constitute a threat to do something which it had no right to do. Nor could the company's demand that Martinez execute the waiver constitute an unlawful act. As we held above, the waiver was not something which violated the law. Thus, requesting it when IBP had no duty to voluntarily (*i.e.,* without judicial compulsion) recompense the injuries was not, as a matter of law, an unlawful act. Simply put, because Martinez failed to present evidence that IBP acted unlawfully, her invocation of duress could not postpone summary judgment.

---

**3.** Of course, the rules applicable to the execution and enforcement of contractual agreements would no doubt control the accord. *Employers Mut. Cas. Co. v. Poorman,* 428 S.W.2d 698, 700 (Tex.Civ.App.—San Antonio 1968, writ ref'd n.r.e.) (stating that voluntary workmen's compensation is purely a matter of contract and the rights and obligations of the parties are measured by the contract); *United States Fidelity & Guar. Co. v. Valdez,* 390 S.W.2d 485, 489 (Tex. Civ.App.—Houston 1965, writ ref'd n.r.e.) (stating the same).

### Point Three

Martinez's third point of error has two aspects. First, she argues that the court erred in granting summary judgment upon her claim of gross negligence since "IBP did not move for summary judgment" on it. Then, she avers that public policy prohibited the waiver of such claims; therefore, the waiver was void. We overrule the point *in toto*.

#### 1. Whether the Motion Encompassed Gross Negligence

■ Under roman numeral one of its motion, IBP stated "**THIS MOTION EMBRACES ALL CLAIMS.**" (Emphasis in original). The plain and ordinary meaning of the phrase "all claims" would necessarily encompass every claim alleged in Martinez's live pleading, including gross negligence. And, we hesitate to reinterpret the word "all" to mean something less than all.

Moreover, that gross negligence was encompassed by the motion was actually acknowledged by Martinez below. For instance, in her written response to the motion, Martinez expressed that "[t]he defense has before this court a *motion for summary judgment* in an attempt to totally escape liability for its *gross negligence* . . . ." (Emphasis added). Since Martinez herself interpreted the motion to include gross negligence, we are hard pressed to say otherwise.

#### 2. Whether Gross Negligence Can Be Waived

■ As to the contention that public policy forbids one from waiving choses sounding in gross negligence, the Texas Supreme Court recently held that one can relinquish a claim of gross negligence via a release executed after the injury occurred. *Memorial Medical Center v. Keszler*, 943 S.W.2d at 435. According to the court, such releases do not violate public policy. *Id.* Since the waiver at bar was so executed, we are unable to say that it violated public policy.

### Point Five

In point five, Martinez states that the "court also erred in granting IBP's motion for summary judgment on the issue of negligence because [she] was not estopped from filing suit . . . due to the doctrine of election of remedies . . . ." Our having found that the decision to reject her claims of negligence is supportable on other grounds, we need not address her current point.

### Point Six

In point six, Martinez states that the "court erred in granting summary judgment on the issue of negligence because the waiver she signed was void and could not be ratified . . . ." Again, our disposition of points two and four relieve us from having to address this point.

### Point Seven and Cross-Point One

In her seventh point, Martinez argues that summary judgment was improper on the issue of retaliatory discharge "because [she] established a causal connection between her claim for benefits and her termination . . . [and] offered ample evidence to raise a question of fact as to when she was discharged, [sic] and whether she was discharged . . . in retaliation for filing a claim . . . ." IBP responds by arguing that it proved, as a matter of law, no causal connection or retaliation. It further contends, by cross-point, that the court erred in refusing to uphold its objections to the summary judgment affidavit of Martinez. We sustain IBP's cross-point and overrule point seven.

■ In effort to defeat the claim that IBP terminated her for legitimate reasons, Martinez proffered her own affidavit, with attachments. In it, she stated that Mr. Ingram (IBP's personnel manager for production) "told . . . [her] that I was fired because I had filed a lawsuit against I.B.P. for my injuries." Of course, IBP's summary judgment evidence contradicted her allegations. According to the company, she was terminated due to her excessive absences and failure to bid on a job as required by a collective bargaining agreement. Suffice it to say that under the summary judgment standard of review, Martinez's statement would create a question of material fact concerning whether she was fired and why if the affidavit were competent summary judgment evidence. *See Miller v. Galveston/Houston Diocese*, 911

S.W.2d at 899 (holding that the summary judgment evidence is construed in a manner most favorable to the non-movant); *Whitney Crowne Corp. v. George Distrib., Inc.,* 950 S.W.2d 82, 84 (Tex.App.—Amarillo 1997, writ denied), *citing, Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985) (holding that the non-movant's summary judgment evidence must be accepted as true). But, the affidavit was *not* competent, and the trial court should have upheld IBP's objections to it.

Except as authorized by statute, a summary judgment affidavit "is insufficient unless the allegations contained therein are direct and unequivocal and perjury can be assigned upon it." *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984); *Burke v. Satterfield,* 525 S.W.2d 950, 955 (Tex.1975). In other words, the affiant must "positively and unqualifiedly represent the 'facts' ... disclosed in the affidavit to be true and within his personal knowledge." *Brownlee v. Brownlee,* 665 S.W.2d at 112. An affirmation that is equivocal or based upon the " 'best of [one's] knowledge' " fails to satisfy this requirement, according to the Supreme Court, *Burke v. Satterfield,* 525 S.W.2d at 954–55, and several intermediate appellate courts. *Hall v. Stephenson,* 919 S.W.2d 454, 466 (Tex.App.—Fort Worth 1996, writ denied); *International Turbine Serv., Inc. v. Lovitt,* 881 S.W.2d 805, 808 (Tex.App.—Fort Worth 1994, writ denied); *see Wells Fargo Constr. Co. v. Bank of Woodlake,* 645 S.W.2d 913, 914 (Tex.App.—Tyler 1983, no writ) (holding that allegations contained in an affidavit that is attested to "on information and belief" are not proper summary judgment evidence). Simply put, in so conditioning an affidavit, the affiant is really saying that the allegations are true "as far as he knows." That is hardly an unequivocal pronouncement about the truthfulness of the supposed facts contained in the affidavit. Indeed, one can say that the world is flat "as far as he knows." And, while that utterance may be a true statement of his belief or the extent of his knowledge, it is not a true statement of fact.

So, it is one thing to say that a statement is true; it is quite another thing to say that "as far as I know" something is true.

Here, the attestation contained in Martinez's affidavit reads "I state the above is true and correct to the *best of my knowledge.*" (Emphasis added). So conditioned, it not only fails to satisfy the requisites of *Brownlee, Burke, Hall, Lovitt,* and *Wells Fargo,* but also renders the allegations contained in the affidavit incompetent summary judgment proof. *Id.* Thus, IBP was entitled to have the court uphold its objections to the affidavit on that basis, and in refusing to do so, the court erred.[4]

More importantly, because the affidavit is incompetent summary judgment proof, there is no evidence of record rebutting IBP's evidence. Nothing exists to contradict its factual allegations illustrating that Martinez was fired not in retaliation for anything but because of her undue absences and failure to abide by the collective bargaining agreement. So, IBP was entitled to summary judgment on the matter.

### *Point Eight*

In her eighth and last point, Martinez alleges that summary judgment upon her claims of negligence was improper because one who has unclean hands, such as IBP, cannot invoke the equitable defense of estoppel. So too does she posit that estoppel cannot be used to validate her release of IBP, since the release was void. Again, this point relates to but one of the grounds asserted by IBP for summary judgment upon the claims of negligence. Since the decree can be affirmed on grounds, such as waiver and release, we need not address point eight.

Accordingly, the summary judgment is affirmed.

---

4. Similarly, an affidavit must aver fact, not legal conclusion. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984). So, Martinez's statement that she was in "extreme pain and ... forced under duress to sign the waiver" is an inadmissible legal conclusion. It too should have been excluded in response to IBP's objection.