Marjorie ROSS, Joan Seelback, Timothy R. Ross, James R. Ross, Billy R. Ross, and Robert R. Ross, Appellants

v.

UNION CARBIDE CORPORATION, Appellee.

No. 14–07–00860–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 25, 2009.

208

Marcus D. Pinney, Houston, TX, for appellants.

Stephen G. Tipps, James H. Powers, Houston, TX, for appellees.

En banc court consists of Chief Justice HEDGES; Justices YATES, ANDERSON, FROST, SEYMORE, GUZMAN, BROWN, and SULLIVAN; and Senior Justice PRICE.*

## MAJORITY OPINION ON EN BANC REVIEW

EVA M. GUZMAN, Justice.

In this asbestos case, we must determine whether a broad settlement and release agreement executed by an injured worker and his wife acts as a bar, after the worker's death, to his survivors' claims against his employer for exemplary and loss-of-consortium damages. In particular,

* Senior Justice Frank C. Price sitting by assignment.

the survivors argue that their exemplary-damages claim is not derivative of any cause of action owned by the worker or that accrued during his lifetime, but is instead an independent cause of action under the Workers' Compensation Act and article XVI, section 26 of the Texas Constitution. They therefore contend that the trial court erred in granting summary judgment to the employer based on the worker's release of his claims. We disagree with the survivor's premise that their exemplary-damages claim is a non-derivative cause of action, overruling our prior decision in *Perez v. Todd Shipyards Corp.*, 999 S.W.2d 31 (Tex.App.-Houston [14th Dist.] 1999), *pet. denied*, 35 S.W.3d 598 (2000). We also disagree with the survivors' arguments that the release (1) is void in that it impermissibly settles workers' compensation claims, or alternatively, applies only to products-liability claims, and not to claims of premises or employer liability; and (2) is unenforceable because it is the result of unilateral mistake, is unconscionable, or otherwise violates public policy. Because the survivors' exemplary-damages and loss-of-consortium claims are encompassed within the release, we affirm the trial court's judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

After working as a pipefitter for more than thirty-seven years, Homer Ross developed an asbestos-related disease from his workplace exposure. In 1989, Ross and his wife Marjorie sued twenty-two asbestos manufacturers, alleging that Homer "is suffering from an asbestos-related disease and his future outlook is very dim. He has sought the services of physicians in an effort to cure or arrest the condition from which he is suffering, but to no avail." They asserted Homer's claim for personal injury and Marjorie's claim for loss of consortium under theories of strict liability, negligence, gross negligence, intentional conduct, and breach of warranty. In 1993, both Homer and Marjorie reached a settlement with the Center for Claims Resolution ("CCR"), a nonprofit corporation formed by twenty-one companies to act as the companies' agent in asbestos litigation. Homer's former employer Union Carbide Corporation ("Union Carbide"), which was then known as Union Carbide Chemicals & Plastics Co., Inc., was a member of the CCR. Although Union Carbide was not a defendant in the suit, it was a party to the settlement and release (the "Release").

The Release provides in pertinent part as follows:

WHEREAS, Homer G. Ross and Marjorie Ross have agreed to settle and compromise their claim and cause of action asserted and which could be asserted in said suit, including, but not limited to, each and every cause of action for loss of consortium, personal injury, medical expenses, ... and any future claim for alleged wrongful death under the statutes and laws of the State of Texas;

WHEREAS, ... the Releasees and the Releasors desire to enter into a final compromise and settlement of any and all claims which they have or may hereafter have against the Releasees, for injuries to Homer G. Ross, and any claim for injuries to Marjorie Ross, including loss of consortium, mental anguish, or the future death of Homer G. Ross, arising directly or indirectly from such injuries, disease or death.

NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS:

THAT WE, Homer G. Ross and Marjorie Ross, ... joined by our attorney, hereby fully and finally RELEASE, ACQUIT and FOREVER DISCHARGE the Releasees from any and all claims, demands, causes of action of whatsoever

nature or character which we may now have or hereafter have against the Releasees, including ... damages, punitive and exemplary damages, loss of consortium, damages under Wrongful Death and Survival Statutes, Worker's Compensation liens ... in any manner arising out of, or in any way connected with, directly or indirectly, the exposure or occurrences of injuries, disease, illness or death of Homer G. Ross, above described, as well as any consequence thereof, as well as any cause of action sustained or to be sustained by Marjorie Ross.

This Release shall be construed as broadly as possible with regard to the alleged injuries of Homer G. Ross and shall include, but not be limited to, asbestosis, mesothelioma, cancer and any disease of the body that could now or in the future be alleged to be related to the exposure of Homer G. Ross to asbestos-containing products of any of the Releasees....

We intend this Release to be as broad and comprehensive as possible so that the Releasees shall never be liable, directly or indirectly, to us or our beneficiaries, heirs, successors or assigns, or any person ... claiming by, through, under or on behalf of us or them, for any claims, demands, actions or causes of action of whatsoever nature or character arising out of any illness[,] disease or death of Homer G. Ross or damages to Marjorie Ross in any way connected with the use of or exposure to various materials and products manufactured, sold or distributed by the Releasees....

The Releasors expressly contract that no claim or cause of action of any type is reserved against any Releasees. If any other claims exist against the Releasees, whether directly or indirectly, whether released herein or not, whether foreseeable or unforeseeable, the Releasors hereby assign those claims in full to the Releasees....

In consideration for the payment of the aforesaid sum, Homer G. Ross and Marjorie Ross, for themselves, their beneficiaries and heirs and on behalf of their successors and assigns[,] agree to indemnify and hold harmless the Releasees from any further payment of damages, debts, liens, charges and/or expenses of any character incurred by or on behalf of the Releasees as a result of any further claim by Homer G. Ross and spouse, Marjorie Ross, or their representatives, heirs, or assigns. Homer G. Ross and Marjorie Ross[ ] further agree to indemnify and hold harmless the Releasees from any and all liability for the payment of damages by reason of any claims asserted by any person ... as a result of any claim ... made by or to Homer G. Ross and spouse, Marjorie Ross, or their representatives, heirs, or assigns, arising out of any illness of Homer G. Ross and damages claimed or asserted by Marjorie Ross, and the potential claim for the wrongful death of Homer G. Ross in any way connected with the use of or exposure to various materials and products manufactured, sold or distributed by the Releasees....

It is the intent and purpose of this agreement that at no time will the Releasees be called upon to pay any further sum or incur any further expense by reason of any fact, matter or claim, directly or indirectly, ... arising out of or predicated upon any claim, demand, judgment or payment made by or to Homer G. Ross or Marjorie Ross, their beneficiaries, successors, heirs or assigns, arising out of the injuries to, disease of, or death of Homer G. Ross....

[T]his agreement is and may be asserted by the Releasees as an absolute

and final bar to any claim or proceeding now pending or hereafter brought....

By our signatures below we represent that we understand this Full and Final Release and Indemnity Agreement constitutes a final and complete release of all claims regardless of their kind or character, including any possible claim which might be discovered in the future.

Homer died in 2001, and two years later, his wife and children brought an exemplary-damages claim against Union Carbide,[1] alleging that Homer's asbestos-related death was caused by Union Carbide's wilful act, omission, or gross neglect in exposing Homer to asbestos in the workplace. They specified they brought this claim pursuant to article XVI, section 26 of the Texas Constitution and the Workers' Compensation Act, Texas Labor Code section 408.001(b). Marjorie also raised a claim for loss of consortium. Relying on the affirmative defense of release, Union Carbide successfully moved for traditional summary judgment on all claims, and this appeal timely ensued.

## II. Issues Presented

In their first three issues, appellants contend the trial court erred in granting summary judgment because Homer could not have validly assigned, settled, or released their claims arising from his death. In their fourth issue, appellants argue that a fact issue regarding unilateral mistake precluded summary judgment.

## III. Standard of Review

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). In a tradition-al summary-judgment motion, the movant has the burden of showing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). A defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex.2005). Once the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex.1979).

■ We apply a de novo standard of review to the interpretation of our state constitution[2] and consider such factors as the language of the provision, its purpose, its application in prior judicial decisions, and the historical context in which it was written. *See Tesco Am., Inc. v. Strong Indus., Inc.*, 221 S.W.3d 550, 554 n. 15 (Tex.2006). We likewise review questions of statutory construction de novo to ascertain and give effect to the legislature's intent as expressed by the plain meaning of the words it chose to use. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex.2009); *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 683 (Tex.2007).

---

1. Although Homer's estate and two dozen other defendants were originally parties to this action, all claims were non-suited with the exception of the claims of Homer's wife and children against Union Carbide.

2. *See Perry v. Del Rio*, 67 S.W.3d 85, 91 (Tex. 2001).

## IV. ANALYSIS

To clarify appellants' arguments, we first provide the legal context for their claims. Under the terms of the Wrongful Death Act, an individual's surviving spouse, children, and parents may sue for actual damages arising from an injury that results in the individual's death. TEX. CIV. PRAC. & REM.CODE ANN. §§ 71.002, 71.004 (Vernon 2008). If the death was caused by a wilful act or omission or gross negligence, exemplary damages as well as actual damages may be recovered. *Id.* § 71.009. Claims made under the Wrongful Death Act are entirely derivative and thus may be brought only if the injured individual would have been entitled to bring an action for the injury if he had lived. *Id.* § 71.003(a); *In re Labatt Food Serv., L.P.,* 279 S.W.3d 640, 646 (Tex.2009) ("While it is true that damages for a wrongful[-]death action are for the exclusive benefit of the beneficiaries and are meant to compensate them for their own personal loss, the cause of action is still entirely derivative of the decedent's rights."); *Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 345 (Tex.1992).

Appellants filed suit against Union Carbide for exemplary damages, alleging that the company's intentional, knowing, or reckless acts or omissions in regularly exposing Homer to respirable asbestos fibers without providing respiratory protection or advising him of the health risks caused the injuries that resulted in Homer's death. But the Release executed by Homer and Marjorie Ross broadly covers all claims and damages against Union Carbide, including those under the Wrongful Death Act. Thus, the Release bars appellants' claims unless the claims are properly asserted on some basis other than the Wrongful Death Act. Appellants expressly deny that their claims are brought pursuant to the Wrongful Death Act, and

instead contend that specific provisions of the Texas Constitution and the Workers' Compensation Act, alone or in combination, create an exemplary-damages cause of action that is both independent of the Wrongful Death Act and nonderivative of Homer's rights.

Appellants first rely on article XVI, section 26 of the Texas Constitution, which provides as follows:

> Every person, corporation, or company, that may commit a homicide, through wilful act, or omission, or gross neglect, shall be responsible, in exemplary damages, to the surviving husband, widow, heirs of his or her body, or such of them as there may be, without regard to any criminal proceeding that may or may not be had in relation to the homicide.

They next point out that although the recovery of workers' compensation benefits is the exclusive remedy for the death or work-related injury of an employee covered by the Workers' Compensation Act, the Act "does not prohibit the recovery of exemplary damages by the surviving spouse or heirs of the body of a deceased employee whose death was caused by an intentional act or omission of the employer or by the employer's gross negligence." *See* TEX. LAB.CODE ANN. § 408.001(b) (Vernon 2006). Appellants contend that these provisions, either separately or together, allow them to recover exemplary damages based on Union Carbide's grossly negligent or intentional acts or omissions that caused the injuries that led to Homer's death. They argue that the Release does not cover their claims arising from Homer's death because such claims did not accrue until after his death and never belonged to Homer. They further reason that Homer could not settle and thereby "sell" the claims because "one cannot sell what one does not own." Specifically, appellants argue in their first and third is-

sues that the trial court erred in granting summary judgment based on the Release because Homer could not release his survivors' exemplary-damages claim under article XVI, section 26 of the Texas Constitution or section 408.001(b) of the Workers' Compensation Act.[3]

## A. No Independent Exemplary–Damages Claim Under the Texas Constitution or Workers' Compensation Act

In construing a state constitutional provision, "the fundamental guiding rule is to give effect to the intent of the makers and adopters of the provision in question." *Harris County Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex.2009). And because any such provision is "construed in the light of the conditions existing at the time of adoption," its meaning "is fixed when it is adopted, and it is not different at any subsequent time." *Cramer v. Sheppard*, 140 Tex. 271, 285, 167 S.W.2d 147, 154 (1942) (orig. proceeding).

Here, our analysis of article XVI, section 26 of the Texas Constitution is made easier because our highest court already has analyzed and explained, in a unanimous decision, this section's purpose:

> [T]he reason for adoption of the constitutional provision was to allow for exemplary damages *under the Wrongful Death Act* because of an early interpretation that such damages were not authorized by the Act .... It did not abrogate the common law requirement of actual damages and extend the remedy to those with no cause of action under the [Wrongful Death] Act.

*Travelers Indem. Co. of Ill. v. Fuller*, 892 S.W.2d 848, 851–52 (Tex.1995).[4] Thus, *Fuller* makes clear that a claim for exemplary damages under article XVI, section 26 is asserted through the Wrongful Death Act, not separately from it. Consequently, "a decedent's pre-death contract may limit or totally bar a subsequent action" by his wrongful-death beneficiaries. *See Labatt Food Serv.*, 279 S.W.3d at 644 (citing *Sullivan–Sanford Lumber Co. v. Watson*, 106 Tex. 4, 155 S.W. 179, 180 (Tex.1913)). If, during his lifetime, the decedent released the tortfeasor from further liability, then his survivors' subsequent wrongful-death claims are barred. *Thompson v. Fort Worth & R.G. Ry.*, 97 Tex. 590, 80 S.W. 990, 991 (1904). Therefore, because the Release broadly discharged Union Carbide from liability (specifically including liability for exemplary damages and wrongful death), and a claim for exemplary damages under article XVI, section 26 is a derivative cause of action that may be asserted only through the Wrongful Death Act, appellants' claim for exemplary damages under the Texas Constitution is barred by the Release. *See Labatt Food Serv.*, 279 S.W.3d at 646 (explaining that wrongful-death beneficiaries "stand in [the decedent's] legal shoes and are bound by his agreement").

Appellants' argument that the Workers' Compensation Act creates an independent, nonderivative cause of action is similarly unpersuasive. In interpreting a statute, our goal is to ascertain the legislature's intent by examining the statute's plain language. *City of DeSoto v. White*, 288 S.W.3d 389, 394–95 (Tex.2009). Because

---

3. Or, as appellants frame the issues, that such a claim could not be sold to the employer by the injured employee.

4. *See also id.* at 850 (explaining that when the Republic of Texas adopted the common law,

there was no common law cause of action for wrongful death); *Morrow v. Corbin*, 122 Tex. 553, 564, 62 S.W.2d 641, 647 (1933) (explaining that the Texas Constitution "is to be interpreted in the light of the common law").

the words chosen by the legislature "should be the surest guide to legislative intent," the text is determinative unless enforcement of the statute's plain language would produce absurd results. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d at 437. And contrary to appellants' contention, section 408.001(b) of the Workers' Compensation Act does not purport to create an independent cause of action, but instead identifies an exception to the Act's exclusivity provision. *See* TEX. LAB.CODE ANN. § 408.001(b) ("This section *does not prohibit* the recovery of exemplary damages by the surviving spouse or heirs of the body of a deceased employee whose death was caused by an intentional act or omission of the employer or by the employer's gross negligence.") (emphasis added). Stated differently, section 408.001(a) explains what the Workers' Compensation Act does—i.e., it provides an exclusive remedy for covered employees and their beneficiaries, substituting the right to statutory benefits for the right to recover actual damages from the worker's employer—and section 408.001(b) explains what the Act does not do—i.e., it does not prohibit certain of a covered employee's survivors from recovering exemplary damages from an employer who caused the employee's death through its intentional act or omission or its gross negligence. *Compare id.* § 408.001(a) *with id.* § 408.001(b). The text of section 408.001(b) is unambiguous, and reading the statute in accordance with its plain language would not produce absurd results.[5] We therefore conclude that section 408.001(b) of the Workers' Compensation Act does not create a nonderivative cause of action for exemplary damages independent of the Wrongful Death Act.

### 1. *Perez* Overruled

Although appellants cite several cases in support of their argument that the Texas Constitution and the Workers' Compensation Act create an independent, nonderivative cause of action, we find these authorities unpersuasive or inapplicable and therefore decline to follow them. Chief among the authorities on which appellants rely is this court's prior decision in *Perez v. Todd Shipyards Corp.*

In *Perez*, a deceased employee's children and personal representative sued the worker's employer for gross negligence in allegedly causing the employee's death from asbestos exposure. 999 S.W.2d at 32. The employer filed a bankruptcy petition in 1987, and the plan was confirmed in 1990. *Id.* While the bankruptcy action was pending, the employee was diagnosed with a benign asbestos-related pleural disease. *Id.* In 1992, the employee was diagnosed with metastatic mesothelioma and died three months later. *Id.*

His employer argued that the children's claims were derivative of the employee's claims, which were barred by the employer's previously-obtained discharge in bankruptcy. *Id.* We rejected that argument on the grounds that the children's claims were not brought under the Wrongful Death Act, but instead were brought pursuant to article XVI, section 26 of the Texas Constitution and section 408.001(b) of the Workers' Compensation Act. We concluded that the children did not present "a derivative action arising from any rights that may have been possessed by the decedent" because "[t]he cause of action provided to the surviving family under the Texas Constitution and the Labor Code is not an action that could have been brought by the deceased." *Id.* at 33.

Although this is the same argument presented by appellants, we cannot agree with

---

**5.** Appellants do not contend otherwise.

their contention that *Perez* accurately represents the settled law in this district applicable to the issues before us. Simply stated, the reasoning in *Perez* cannot be reconciled with that of the previously-discussed decisions of the Texas Supreme Court. *See, e.g., Fuller,* 892 S.W.2d at 851–52; *Russell,* 841 S.W.2d at 345–47;

*Sullivan–Sanford Lumber Co.,* 155 S.W. at 180; *Thompson,* 80 S.W. at 992.[6] In *Perez,* we neither followed nor distinguished *Fuller, Russell, Sullivan–Sanford Lumber Co.,* or *Thompson,*[7] and because *Perez* is contrary to the reasoning of prior as well as subsequent decisions of the Texas Supreme Court and of this court,[8] it has been

---

6. As the higher court has pointed out, "[i]t is not the function of a court of appeals to abrogate or modify established precedent." *Lubbock County, Tex. v. Trammel's Lubbock Bail Bonds,* 80 S.W.3d 580, 585 (Tex.2002).

7. We also note that the holdings of the authorities cited in *Perez* do not support its reasoning. *See Perez,* 999 S.W.2d at 33 (citing *Smith v. Atl. Richfield Co.,* 927 S.W.2d 85, 87 (Tex.App.-Houston [1st Dist.] 1996, writ denied), *Universal Servs. Co. v. Ung,* 904 S.W.2d 638, 639–40 (Tex.1995), and *Texaco, Inc. v. Sanderson,* 898 S.W.2d 813, 814 (Tex. 1995) (orig. proceeding) (per curiam)). In *Smith v. Atlantic Richfield Co.,* the family members of a deceased worker challenged the summary judgment granted in the employers' favor on their exemplary-damages claim. 927 S.W.2d at 87. The employers argued that Smith could not have sued for his injuries had he survived because his exclusive remedy was workers' compensation benefits, and because Smith could not sue for actual damages, his family had no cause of action for exemplary damages. *Id.* But as Smith's family correctly pointed out, its cause of action was permitted by section 408.001(b) of the Workers' Compensation Act. *Id.* Smith's employers conceded that this provision would have saved a state constitutional cause of action, but pointed out *Fuller* "explicitly extinguished" any independent cause of action under article XVI, section 26. *Id.* This argument, however, appears to have been a red herring, for the *Smith* opinion contains no indication the family pursued its claim under the Texas Constitution rather than the Wrongful Death Act. To the contrary, the court not only acknowledged the family's position that its claim was permitted by section 408.001(b) of the Labor Code, *id.* at 87–88, but expressly noted that the family relied on *Texaco, Inc. v. Sanderson* and *Universal Services Co. v. Ung* in support of their position. *Id.* at 88 (citing *Sanderson,* 898 S.W.2d at 814, and *Ung,* 904

S.W.2d at 639–40). Significantly, neither *Sanderson* nor *Ung* contains any mention of the Texas Constitution whatsoever.

8. *See, e.g., Suber v. Ohio Med. Prods., Inc.,* 811 S.W.2d 646 (Tex.App.-Houston [14th Dist.] 1991, writ denied) (en banc). In *Suber,* a plaintiff asserted a design-defect claim and recovered a judgment for her personal injuries. *Id.* at 648. After her death, her surviving spouse, children, and mother sued the same defendants for the decedent's wrongful death, and the trial court granted summary judgment in favor of the defendants. *Id.* On appeal, the survivors challenged the judgment on the ground, *inter alia,* that article XVI, section 26 of the Texas Constitution guarantees gross-negligence wrongful-death beneficiaries a cause of action for exemplary damages, regardless of whether the injured person recovered damages for her injuries during her lifetime. *See id.* at 651. We explained our rejection of this argument as follows:

> Although this section provides for exemplary damages upon a finding of gross negligence, it is inapplicable where an award of actual damages is unsupportable. Because appellants are barred from bringing a wrongful[-]death action in the instant case, there can be no recovery of actual damages, and thus, no recovery of exemplary damages. Consequently, this constitutional provision is inapplicable.

*Id.* (citation omitted). Notably, our decision in *Suber* was cited with approval by the Texas Supreme Court in *Fuller* for the proposition that article XVI, section 26 "did not change the common law actual damages requirement." *Fuller,* 892 S.W.2d at 851 n. 3.

Only a month after deciding *Perez,* we made no mention of it when following contrary reasoning in *Frias v. Atlantic Richfield Co.,* 999 S.W.2d 97, 103 (Tex.App.-Houston [14th Dist.] 1999, pet. denied). Contrary to appellants' characterization, our decision in *Frias* did not address the derivative nature of the

a source of unnecessary confusion.[9]

In sum, *Perez* presents an unsupported and unsustainable departure from precedent. To obtain uniformity among this court's decisions and reduce further confusion, we therefore overrule *Perez*. *See* TEX.R.APP. P. 41.2(c) (authorizing en banc consideration of a case when necessary to secure uniformity of the court's decisions).

### 2. *Sbrusch* Rejected

Appellants also point to some federal cases containing language suggesting that the Worker's Compensation Act created an independent cause of action for exemplary damages. *See, e.g., Sbrusch v. Dow Chem. Co.*, 124 F.Supp.2d 1090, 1092 (S.D.Tex. 2000); *Castillo v. Angelo Iafrate Constr., L.L.C.*, No. Civ.A. 303CV0061L, 2003 WL 22287637, at *3–4 (N.D.Tex. Sept. 30, 2003) (not reported) (following *Sbrusch* ).[10] We are not obligated to follow these decisions in the same way that we are obligated to follow the precedent of our State's highest courts and the United States Supreme Court. *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex.1993) (per curiam). Moreover, we do not consider the *Sbrusch* court's reasoning persuasive.

The *Sbrusch* court analyzed the Texas Supreme Court's opinion in *Wright v. Gifford–Hill & Co.*, 725 S.W.2d 712, 713 (Tex. 1987), and concluded that "*Wright* supports the view that the Texas Supreme Court, if confronted with the issue directly, would hold that section 408.001 creates an independent cause of action for exemplary damages based on wrongful death, as opposed to merely saving a pre-existing cause of action." *Sbrusch*, 124 F.Supp.2d at 1092. The issue addressed in *Wright* was whether a claimant who was entitled to workers' compensation benefits was precluded from recovering exemplary damages in the absence of a jury finding on the amount of actual damages sustained as a result of the worker's death. *Wright*, 725 S.W.2d at 713–14. The Texas Supreme Court rejected the argument, noting that "[t]he plaintiff in a workers' compensation case cannot recover actual damages . . . . Therefore, it is a waste of the jury's time and efforts to require a finding of an amount of actual damages in such a case." *Wright*, 725 S.W.2d at 714. The court did not hold that section 408.001(b) creates an independent cause of action for exemplary damages, and as pre-

---

plaintiffs' claims or the date on which their claims accrued. Moreover, we did not hold that family members have an independent cause of action under the Texas Constitution; to the contrary, we quoted the Texas Supreme Court's statement in *Fuller* that article XVI, section 26 "*guarantees* the remedy of punitive damages . . . when a wrongful[-]death beneficiary *otherwise possesses a cause of action for compensatory relief* . . . ." *Id.* at 103 (quoting *Fuller*, 892 S.W.2d at 853) (emphasis added).

9. *See, e.g., Zacharie v. U.S. Natural Res., Inc.*, 94 S.W.3d 748, 756–57 (Tex.App.-San Antonio 2002, no pet.) (citing *Perez* as authority for the existence of an independent, nonderivative cause of action for gross negligence under the Texas Constitution and the Workers' Compensation Act); *Crowder v. Am. Eagle Airlines, Inc.*, 118 Fed.Appx. 833, 841–42 & n. 41 (5th Cir.2004) (per curiam, not for publication)

(same); *Castillo v. Angelo Iafrate Constr., L.L.C.*, No. Civ.A. 303CV0061L, 2003 WL 22287637, at *3 (N.D.Tex. Sept. 30, 2003) (not reported) (same).

10. *But see Wyble v. E.I. DuPont de Nemours & Co.*, 17 F.Supp.2d 641, 644–46 (E.D.Tex.1998) (repeatedly referring to language in the Texas Workers' Compensation Act exempting exemplary-damage gross-negligence suits by certain survivors of deceased workers from the exclusivity rule as a "savings clause"); *Callis v. Union Carbide Chem. & Plastics Corp.*, 932 F.Supp. 168, 170–71 (S.D.Tex.1996) ("While the Workers' Compensation Act *generally* provides the exclusive remedy for work-related injuries, it does not prohibit the recovery of exemplary damages under the Wrongful Death Act for gross negligence resulting in death.").

viously discussed, such an interpretation is inconsistent with the statute's unambiguous text.

■■ Contrary to the authorities cited by appellants, precedent and plain language dictate the conclusion that neither article XVI, section 26 of the Texas Constitution nor section 408.001(b) of the Workers' Compensation Act, alone or in conjunction with one another, creates a nonderivative cause of action that may be asserted independently from the Wrongful Death Act. Because claims under the Wrongful Death Act are derivative of the injured person's claim and Homer released Union Carbide from liability for gross negligence, exemplary damages, or his future death, appellants' claim for exemplary damages is barred by the Release. We therefore overrule appellants' first and third issues.[11]

## B. Release Is Not Void

■■ Because of the derivative nature of their claims, wrongful-death beneficiaries are generally bound by the injured family member's contract releasing the alleged tortfeasor from liability. *See Labatt Food Serv.*, 279 S.W.3d at 644. But settlements of claims for workers' compensation benefits are governed by the Workers' Compensation Act, which requires the parties to obtain the workers' compensation commissioner's approval of such agreements. *See* Tex. Lab.Code Ann. § 408.005. Absent approval, a workers' compensation claimant "cannot settle his claim by accepting a payment of money and signing a common-law release." *Starnes v. Tex. Employers' Ins. Ass'n*, 549 S.W.2d 46, 47 (Tex.Civ.App.-Dallas 1977, writ ref'd n.r.e.). To the contrary, with exceptions inapplicable here, "an agreement by an employee to waive the employee's right to compensation is void." Tex. Lab.Code Ann. § 406.035. Appellants therefore contend in their second issue that if the Release waived all claims arising from Homer's asbestos exposure, then it also impermissibly waived any right to workers' compensation benefits. Because the Release contains no severability clause, appellants further argue that the inclusion of the unlawful provision voids the entire agreement. In the alternative, appellants assert that the Release addresses only products-liability claims, and not claims of employer or premises liability. Appellants argue that as a result of such defects, the Release does not bar their claim for exemplary damages or Marjorie's claim for loss of consortium.

■■ But even assuming that the Release encompasses claims for workers' compensation benefits in violation of section 406.035 of the Labor Code,[12] the ab-

11. We do not imply that a deceased worker's survivors could not maintain an action against the worker's employer if the worker had released only third parties; here, however, the employer was among those released from liability.

12. Section 406.035 of the Texas Labor Code applies only to subscribing employers. *See Martinez v. IBP, Inc.*, 961 S.W.2d 678, 682 (Tex.App.-Amarillo 1998, pet. denied). The parties, however, cite no evidence regarding Union Carbide's status as a subscriber. Appellants did not assert in their pleadings at trial or in their statement of facts on appeal that Union Carbide was a workers' compensation subscriber. *Cf.* Tex.R.App P. 38.1(g) ("In a civil case, the court will accept as true the facts stated unless another party contradicts them."). In the argument section of their brief, however, appellants state that "[a]s Union Carbide was a subscriber employer, the only claims Mr. and Mrs. Ross have ever held against Union Carbide, be it now or in 1993, are/were workers' compensation remedies." Inasmuch as virtually all of appellants' arguments are based on the assumption that Union Carbide is a workers' compensation subscriber and Union Carbide does not appear to have addressed that premise, either at trial or

sence of a severability clause does not necessarily void the entire agreement. Severability is determined by the intent of the parties as evidenced by the language in the contract. *In re Kasschau*, 11 S.W.3d 305, 313 (Tex.App.-Houston [14th Dist.] 1999, orig. proceeding) (op. on reh'g). Generally, an illegal or unconscionable contract provision may be severed if it does not constitute the essential purpose of the agreement. *In re Poly-America, L.P.*, 262 S.W.3d 337, 360 (Tex. 2008); *see also Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 565 (Tex.2006) (explaining that if a contract or term " 'is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result' " (quoting RESTATEMENT (SECOND) OF CONTRACTS § 208 (1981))). "The issue is whether the parties would have entered into the agreement absent the illegal parts." *Kasschau*, 11 S.W.3d at 313. Therefore, the court "must determine the central and essential purpose of the settlement agreement." *Id.*

■ Here, the central and essential purpose of the Release is to resolve any claim that has been or could be asserted against the members of the CRC based on Homer's personal injury or death from asbestos exposure. Although the Release expressly includes any claim by his survivors for exemplary damages or loss of consortium, claims for workers' compensation benefits are not mentioned. Consequently, such claims are included in the Release only if we construe the contract's terms to include them. *See Lewis v. Davis*, 145 Tex. 468, 472, 199 S.W.2d 146, 149 (1947)

("[W]here the illegality does not appear on the face of the contract it will not be held void unless the facts showing its illegality are before the court."). But because the purpose of the legal system is to combat unlawfulness, not promote it, we cannot construe a contract to impose or enforce an illegal obligation. *Cayan v. Cayan*, 38 S.W.3d 161, 166 n. 8 (Tex.App.-Houston [14th Dist.] 2000, pet. denied). When two constructions of a contract are possible, we must apply the one that does not result in a violation of law. *Lewis*, 145 Tex. at 472–73, 199 S.W.2d at 149. We therefore conclude that the parties intended the release to be as broad and comprehensive as the law allows, but not more so.

■ Moreover, even if the Release encompasses the right to workers' compensation benefits, an invalid release and assignment of workers' compensation claims can be severed from the remainder without doing violence to the parties' agreement to waive the claims specifically referenced therein, including claims for products liability, loss of consortium, wrongful death, and exemplary damages. *See Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 20 S.W.3d 692, 697–98 (Tex. 2000) (holding that a broad-form release of " 'all demands, claims or causes of action of any kind whatsoever' " validly released "unknown claims and damages that develop in the future"); *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991) (analyzing a more narrowly-tailored release and stating that "the releasing instrument must 'mention' the claim to be released"). Finally, there is no evidence that the parties would have declined to execute a Release that did not dispose of claims for statutory workers' compensation

on appeal, we assume without deciding that Union Carbide's status as a subscribing employer is undisputed.

benefits.[13] *Cf. Kasschau*, 11 S.W.3d at 313.

In support of their alternative argument that Homer and Marjorie Ross settled only products-liability claims, appellants point to language in the Release referring to "materials and products manufactured, sold or distributed by the Releasees," overlooking other provisions in which the Rosses released the members of the CRC "from any and all claims, demands, causes of action of whatsoever nature or character which we may now have or hereafter have … arising out of, or in any way connected with, directly or indirectly, the exposure or occurrences of injuries, disease, illness or death of Homer G. Ross." And because we must presume that the parties to a contract intended *every* clause to have some effect, we cannot selectively grant controlling effect to the individual provisions appellants cite. *See rePipe, Inc. v. Turpin*, 275 S.W.3d 39, 44 (Tex.App.-Houston [14th Dist.] 2008, no pet.) (citing *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996)). Instead, we examine the entire contract and harmonize its provisions so that none are rendered meaningless. *Id.* (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex.2003)). If the parties have entered into an unambiguous writing, we will enforce the parties' intentions as expressed in the contract, and because "it is objective, not subjective, intent that controls," the writing alone ordinarily is sufficient to express the parties' intentions. *Matagorda County Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 740 (Tex.2006) (per curiam).

As illustrated by the provisions of the Release excerpted in Section I of this opinion, the parties to the Release expressly and repeatedly stated their intent to settle any and all of the Ross family's present or future claims arising from Homer's injuries or death, including Marjorie Ross's claim for loss of consortium. In addition to reciting categories of waived claims, the parties also stated their intentions in broad but general terms:

> It is the intent and purpose of this agreement that at no time will the Releasees be called upon to pay any further sum or incur any further expense by reason of any fact, matter or claim, directly or indirectly, … arising out of or predicated upon any claim, demand, judgment or payment made by or to Homer G. Ross or Marjorie Ross, their beneficiaries, successors, heirs or assigns, arising out of the injuries to, disease of, or death of Homer G. Ross….

As an added safeguard of finality, Homer and Marjorie Ross assigned to Union Carbide and the other Releasees any other claims that they or their heirs could assert in connection with Homer's injury or death.

Viewing the contract as a whole, we do not agree that the Release is void or its scope limited as appellants suggest. We therefore overrule appellants' second issue.

## C. Unilateral Mistake

In their fourth issue, appellants argue that the trial court erred in granting summary judgment in favor of Union Carbide regarding their exemplary-damages claim and Marjorie's loss-of-consortium claim because there is a question of fact as to whether appellants are entitled to the equitable remedy of rescission under the doctrine of unilateral mistake. Relief from a unilateral mistake is available "when the conditions of remediable mistake are present." *James T. Taylor & Son, Inc. v.*

**13.** There is no evidence that Homer or appellants have ever asserted a claim for workers' compensation benefits in connection with his asbestos-related injuries or death.

*Arlington Indep. Sch. Dist.,* 160 Tex. 617, 620, 335 S.W.2d 371, 372–73 (Tex.1960). As the Texas Supreme Court further explained,

> These conditions generally are: (1) the mistake is of so great a consequence that to enforce the contract as made would be unconscionable; (2) the mistake relates to a material feature of the contract; (3) the mistake was made regardless of the exercise of ordinary care; and (4) the parties can be placed in status quo in the equity sense, i.e., rescission must not result in prejudice to the other party except for the loss of his bargain.

*Id.* Appellants contend that Homer and Marjorie Ross "exercised ordinary care before signing the agreement and still made a material mistake"; however, the only evidence produced in support of this contention was Marjorie's affidavit.

■ Although appellants contend that the affidavit raises a fact issue concerning the availability of equitable relief, the affidavit simply contains assertions that (1) Homer never worked for Union Carbide Chemicals & Plastics Co., Inc.; (2) "[i]t was not revealed" to the Rosses at that time that any party to the Release was liable to them "for anything other than manufacturing, selling, or distributing an asbestos[-]containing product"; (3) when Homer and Marjorie executed the Release, they "had no understanding" of who Union Carbide Chemicals & Plastics Co., Inc. was; and (4) the Rosses would not have entered into the agreement if they had known that Homer's employer was one of the released parties.

In effect, the affidavit addresses only the knowledge that the Rosses possessed without taking any steps to identify the current legal name of Homer's prior employer or the identity of Union Carbide Chemicals & Plastics Co., Inc. But the Rosses were represented by counsel, and their attorney was a signatory to the Release, in which the Rosses acknowledged that they relied not only upon their own knowledge and information, but also upon their attorney's advice regarding their legal rights and the liability of the released parties. The Rosses' attorney further certified that he had "fully explained to them the legal effect thereof and after such explanation they were fully satisfied to release their claims." Nevertheless, Marjorie's affidavit fails to address the summary-judgment evidence that, according to publicly-available records, Union Carbide changed its name to Union Carbide Chemicals & Plastics Co., Inc. in 1989, and changed its name back to Union Carbide Corporation in 1994. And although his employer's legal name was Union Carbide Corporation at the time Homer retired in 1984, the company was named Union Carbide Chemicals & Plastics Co., Inc. when the Release was executed in 1993.

■ Appellants also argue that it would be unconscionable to enforce the contract because Union Carbide did not contribute to the settlement. Under the terms of the contract, however, the entities who are released from liability include Union Carbide and its parent, subsidiary, predecessor, and successor corporations; its insurance carriers; and its present, former, and subsequent officers, directors, attorneys, agents, servants, and employees. The Rosses acknowledged the receipt and sufficiency of the consideration they received, and nothing in the Release required the settlement to be funded by any particular entity or limited the right of any party to enforce the Release. Appellants have not cited, and we have not found, any authority for implying such restrictions. They also state that Union Carbide would not be prejudiced by the rescission of the

Release because the parties would be "placed in the status quo in the equity sense"; however, appellants do not contend that rescission would fail to prejudice the many other companies whose potential liability was extinguished by the Release.

We conclude that appellants have failed to raise a legal or factual issue regarding the availability of equitable relief, and we overrule their fourth issue.

## V. CONCLUSION

Homer and Marjorie Ross, acting for themselves and on behalf of their heirs, reached a final settlement and release for the express purpose of reducing the time, expense, and uncertainty of litigation, and appellants are bound by that decision. Because the trial court correctly concluded that Union Carbide established its right to judgment as a matter of law on the affirmative defense of release and appellants failed to raise a legal or factual issue concerning their assertion of unilateral mistake, we affirm the trial court's judgment.

FROST, J. and PRICE, S.J., concurring.

BOYCE, J., not participating.

KEM THOMPSON FROST, Justice, concurring on en banc review.

It does not take an en banc court to decide not to follow this court's opinion in *Perez v. Todd Shipyards Corporation.* The case under review does not present a conflict between the holdings of two of this court's panels. This case involves one prior panel holding (*Perez* ) that conflicts with and does not mention binding Supreme Court of Texas holdings and a prior en banc holding of this court, all of which were decided before the prior panel holding. In this delicate circumstance, the law of stare decisis dictates that the panel that heard arguments in this case should follow the Supreme Court of Texas precedent

rather than the prior panel opinion. Therefore, en banc review is not necessary to secure uniformity in this court's decisions. *See* TEX.R.APP. P. 41.2(c).

### *How is stare decisis applied to prior panel opinions?*

As this court previously has stated, "absent (1) a decision from a higher court or this court sitting en banc that is on point and contrary to the prior panel decision or (2) an intervening and material change in the statutory law, this court is bound by the prior holding of another panel of this court." *Clear Lake City Water Auth. v. Friendswood Dev. Co.,* No. 14–07–00404–CV, 2008 WL 5131932, at *1 (Tex.App.-Houston [14th Dist.] 2008, pet. filed) (mem. op.). Generally, a subsequent panel of this court must follow the holding of a prior panel. *See id.* However, this general rule does not apply if, after the holding of the first panel, the applicable statutory law materially changes or a contrary holding is mandated by a subsequent holding of the Supreme Court of Texas or this court sitting en banc. *See id. But how is this rule applied when the prior panel holding contradicts a higher-court holding or an en banc holding decided before the prior panel holding?*

If, in its holding, the prior panel applied or distinguished the higher-court or en banc precedent, then subsequent panels are bound by the first panel decision, even if they think that the first panel misapplied and contradicted the superior precedent. *See County of Monroe, Florida v. U.S. Dep't of Labor,* 690 F.2d 1359, 1363 (11th Cir.1982); *Wilson v. Taylor,* 658 F.2d 1021, 1034–35 (5th Cir.1981). If, however, the prior panel holding conflicts with and makes no mention of the holding of a higher court (or an en banc holding of this court) and that higher-court holding is on point and contrary to the prior panel hold-

ing, then a panel of this court is not bound by the prior panel opinion and instead should follow the higher-court holding rather than the prior panel holding. *See Clear Lake City Water Auth.*, 2008 WL 5131932, at *1; *see also County of Monroe, Florida*, 690 F.2d at 1363; *Wilson*, 658 F.2d at 1034–35. In this case, after oral argument before a three-justice panel and before any opinion issued, a majority of the en banc court voted to grant en banc review. According to the majority opinion, the purpose for granting en banc consideration was to overrule *Perez*.[1]

### Could *Perez* be disregarded without en banc review?

As correctly noted by the en banc majority, in *Perez*, a panel of this court used an analysis and reached a result that conflicts with four prior Supreme Court of Texas opinions and one prior en banc opinion from this court.[2] Though bound by these five prior precedents, the *Perez* court did not base its decision on them; indeed, the *Perez* court did not consider or even mention any of these binding precedents. *See Perez v. Todd Shipyards Corp.*, 999 S.W.2d 31, 32–33 (Tex.App.-Houston [14th Dist.] 1999), *pet. denied*, 35 S.W.3d 598 (Tex.2000). Although the majority correctly points out that *Perez* was wrongly decided and should not be followed, the majority incorrectly concludes that en banc review is necessary. En banc

consideration is not favored and should not be granted absent extraordinary circumstances[3] or a need to secure or maintain uniformity of this court's decisions. *See* TEX.R.APP. P. 41.2(c).

Because *Perez* conflicts with and makes no mention of four prior Supreme Court of Texas opinions and one prior en banc opinion from this court, under principles of stare decisis, the panel to whom this case was argued would not be bound by *Perez*, and that panel could and should decide this case by following this higher-court authority rather than *Perez*.[4] *See In re K.M.S.*, 91 S.W.3d 331, 331 (Tex.2002) (noting that, in deciding cases before them, intermediate courts of appeals must follow Supreme Court of Texas holdings that are on point); *Clear Lake City Water Auth.*, 2008 WL 5131932, at *1 (stating that a panel of this court need not follow a prior panel holding if it is contrary to the holding of a higher court or of this court sitting en banc); *see also Wilson*, 658 F.2d at 1034–35 (holding that even though a Fifth Circuit panel is generally bound by the holding of a prior Fifth Circuit panel, a panel should not follow a prior panel holding that conflicts with and makes no mention of a prior holding of the Supreme Court of the United States); *accord County of Monroe, Florida*, 690 F.2d at 1363. Pursuing this course rather than en banc review is not only permissible, but also preferable because it would avoid the significant expen-

---

1. *See ante* at pp. 214–16.

2. *Compare Perez*, 999 S.W.2d at 32–33, *with Travelers Indem. Co. of Ill. v. Fuller*, 892 S.W.2d 848, 851–52 (Tex.1995); *Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343, 345 (Tex. 1992); *Sullivan–Sanford Lumber Co. v. Watson*, 106 Tex. 4, 155 S.W. 179, 180 (1913); *Thompson v. Fort Worth & R.G. Ry.*, 97 Tex. 590, 80 S.W. 990, 991 (1904); *Suber v. Ohio Med. Prods., Inc.*, 811 S.W.2d 646, 649–50 (Tex.App.-Houston [14th Dist.] 1991, writ denied) (en banc).

3. The majority does not claim, and there is no basis for concluding, that there are extraordinary circumstances that require en banc consideration. *See* TEX R.APP. P. 41.2(c).

4. Indeed, the panel also could disregard *Perez* because, as noted by the majority, *Perez* also conflicts with a Supreme Court of Texas holding issued after *Perez*, that in *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 646 (Tex. 2009).

diture of judicial resources and attendant delays and inefficiencies entailed by en banc consideration.[5]

### What is accomplished by en banc review of this case?

No decision this en banc intermediate court could make with regard to *Perez* could possibly impact the choice of which rule to apply. This court must follow the higher court's precedent whether *Perez* is overruled or not. *Perez* is not an alternate path. There is simply no point in granting en banc review to "decide" which rule to apply when the Supreme Court of Texas already has decided. *See id.* Convening this court en banc to overrule *Perez* serves no purpose, imposes an unwarranted burden on the court's resources, and is contrary to principles of stare decisis.

For these reasons, though I concur in the court's judgment, I respectfully disagree with the decision to consider this case en banc.

FRANK C. PRICE, Senior Justice, concurring on en banc review.

I agree that the outcome and the court's analysis follow established precedent. However, in this case, it appears that the interests of some of the wrongful-death beneficiaries may not have been fairly represented in their parents' settlement with the Center for Claims Resolution. Therefore, I reluctantly concur in the result.

The Texas Supreme Court recently reaffirmed the longstanding holding that, because the rights of wrongful-death beneficiaries are entirely derivative, a decedent's pre-death contract may limit, if not extinguish, the beneficiaries' rights to maintain a later suit for damages. *See In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 644 (Tex. 2009) (orig. proceeding). That principle was already well-established[1] before this court issued *Perez v. Todd Shipyards Corp.*[2] and, as an intermediate court of appeals, the court is not free to disregard established Texas Supreme Court precedent. *See Lundstrom v. United Servs. Auto. Ass'n–CIC*, 192 S.W.3d 78, 94 (Tex. App.-Houston [14th Dist.] 2006, pet. denied). Thus, the court correctly holds that the settlement executed by Homer and Marjorie Ross extinguished any future claims their children might have had against Union Carbide Corp. However, I respectfully submit the Texas Supreme Court should revisit the question of whether one party can unilaterally extinguish the rights of another person to sue for his own damages.

A beneficiary child's right to pursue a wrongful death claim does not mature until the parent is deceased. *See* Tex. Civ. Prac. & Rem.Code Ann. § 71.002(a) (Vernon 2008) ("An action for actual damages arising from an injury *that causes an individual's death* may be brought if liability exists under this section.") (emphasis added). Such claim, under the circumstances, belongs exclusively to the child and only

---

5. *See* Douglas H. Ginsburg, *The Court En Banc*, 59 Geo. Wash L. Rev. 1008, 1018–21 (1991) (discussing the significant costs of en banc consideration and concluding that, in the United States Court of Appeals for the D.C. Circuit, the judicial resources consumed by one en banc consideration probably are sufficient to dispose of three other appeals at the panel level).

1. *See Travelers Indem. Co. of Ill. v. Fuller*, 892 S.W.2d 848, 851–52 (Tex.1995); *Russell v. Ingersoll–Rand Co.*, 841 S.W.2d 343, 347 (Tex. 1992); *Sullivan–Sanford Lumber Co. v. Watson*, 106 Tex. 4, 155 S.W. 179, 179 (1913); *Thompson v. Fort Worth & Rio Grande Ry. Co.*, 97 Tex. 590, 80 S.W. 990, 991–92 (1904).

2. 999 S.W.2d 31 (Tex.App.-Houston [14th Dist.] 1999), *pet. denied*, 35 S.W.3d 598 (Tex. 2000).

the child can decide whether to pursue it. *See, e.g., TXI Transp. Co. v. Hughes,* 224 S.W.3d 870, 921 (Tex.App.-Fort Worth 2007, pet. granted) (observing that child's cause of action differs from parent's) (citing *Bleeker v. Villarreal,* 941 S.W.2d 163, 170 (Tex.App.-Corpus Christi 1996, writ dism'd by agr.)). The parent should have no right to affect a choice that does not exist until that parent is deceased. The fact such a claim is *derivative* should not affect determination or choice. Being derivative is merely the procedural mechanism through which a wrongful-death claim exists; it should not be outcome-determinative.

Because a parent does not own such a claim and has no legal interest in the claim, that parent should have no say in whether a child pursues the claim. This is a matter of choice, not a matter of chance. To destroy a child's rights *before* a parent's death, when those rights do not even exist until *after* the death, is just wrong.

When the settlement was consummated in 1993, the children probably would not yet have had a viable cause of action for their father's injury. That is, the record does not indicate that Homer had suffered "serious, permanent, and disabling injuries" of the sort that would have enabled the children to pursue a loss-of-parental-consortium suit. *See Reagan v. Vaughn,* 804 S.W.2d 463, 467 (Tex.1990). Still, a wrongful-death action would not have been ripe in 1993, eight years before Homer's death. *See* Tex. Civ. Prac. & Rem.Code Ann. § 71.002(a).

Even so, in their pleadings, Homer and Marjorie contemplated that Homer's condition might be terminal: "[Homer's] future outlook is very dim. He has sought the services of physicians in an effort to cure or arrest the condition from which he is suffering, but to no avail." Having thus anticipated the probability that Homer's asbestos-related disease would be life-threatening, they nevertheless agreed to a settlement that expressly released their claims *and* their children's eventual wrongful-death claims. *See Mo.-Kan.-Tex. R.R. Co. of Tex. v. Pluto,* 138 Tex. 1, 156 S.W.2d 265, 267–68 (1941) (holding that father who agreed to lump-sum settlement for both his and his son's injuries had interests that conflicted with his son's). The settlement paperwork does not recite that any of the funds were paid to, or held in trust for, the children whose potential claims were released. Yet, because the children were not named as parties to that 1989 lawsuit, Rule 173 apparently did not require that a guardian ad litem be appointed to protect their interests.[3] Thus, the children, whose probable interests were not represented, forever lost the right to later pursue claims for their own uncompensated damages.

Texas has a public policy of encouraging the peaceful resolution of disputes, including Homer's and Marjorie's claims against Union Carbide. *See* Tex. Civ. Prac. & Rem.Code Ann. § 154.002 (Vernon 2005); *Tex. Dep't of Transp. v. Ramming,* 861 S.W.2d 460, 469 (Tex.App.-Houston [14th Dist.] 1993, writ denied). At the same

---

**3.** Before Rule 173 was rewritten in 2005, it provided, "When a minor … is a *party to a suit* either as plaintiff, defendant or intervenor and is represented by a next friend or a guardian who appears to the court to have an interest adverse to such minor … the court shall appoint a guardian ad litem for such person …." Tex.R. Civ. P. 173 (Vernon 2004, amended 2005) (emphasis added). Although the rule has since been rewritten, the new incarnation apparently retains the requirement that the minor be a "party." *See* Tex.R. Civ. P. 173.2(a) ("The court must appoint a guardian ad litem for a *party* represented by a next friend or guardian only if: (1) the next friend or guardian appears to the court to have an interest adverse to the *party,* or (2) the parties agree.") (emphases added).

time, Texas law also promotes the notion that a party's interests should not be decided without affording them the opportunity to have some say in the outcome. *See, e.g., Benson v. Wanda Petrol. Co.,* 468 S.W.2d 361, 364 (Tex.1971) (discussing refusal to apply collateral estoppel to plaintiff "who had no voice in the conduct of the prior suit, with no right to examine witnesses or to take other action to protect his interests") (citations omitted); *Ashworth v. Brzoska,* 274 S.W.3d 324, 333 (Tex.App.-Houston [14th Dist.] 2008, no pet.) (overturning default judgment against party who did not receive notice of trial setting); *Bellino v. Comm'n for Lawyer Discipline,* 124 S.W.3d 380, 387 (Tex. App.-Dallas 2003, pet. denied) (upholding disbarment of attorney who settled clients' claims without obtaining their consent); Tex. Disciplinary R. Prof'l Conduct 1.02(a)(2), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G. app. A (Vernon 2005) (Tex. State Bar R. art. X, § 9) ("[A] lawyer shall abide by a client's decisions ... whether to accept an offer of settlement of a matter ...."); Tex.R. Civ. P. 173 (ensuring that interests of a minor, if a party to the suit, are represented by next friend or guardian ad litem).

If a court, in order to protect the integrity of the legal process as it deals with minor children, is required to approve the procedure and amount when settlement monies are given to a child, *see* Tex.R. Civ. P. 44, it should also approve the procedure when a legal right to pursue such money is taken away from the child. *See Pluto,* 156 S.W.2d at 268 ("[A minor's] interests, must, in good faith, be fully protected; he is *non sui juris* and altogether under the court's protection.") (italics added). In the present case, no such effort was made to protect those rights.

Instead, because Homer and Marjorie were permitted to settle claims that did not belong to them, and that they otherwise had no right to control, the Ross children had no input whatsoever in the release of their claims. Although this outcome is dictated by established Texas Supreme Court precedent, it is contrary to public policy and should be revisited. Therefore, I reluctantly concur.